**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 04-0762-WS-M** |
| | ) | |
| **SEYMOUR A. IRBY III, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on the plaintiff's motion for summary judgment or, in the alternative, for partial summary judgment. (Doc. 23). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 24, 26, 32, 35), and the motion is ripe for resolution. After carefully considering the foregoing materials, the Court concludes that the motion is due to be granted in part and denied in part.

**BACKGROUND**

In 1990, the defendants were named co-executors of their father's estate. Under their direction, the estate paid state and local taxes and made other payments but did not pay certain federal taxes owed by the decedent at his death. The plaintiff brings this lawsuit to recover those taxes, along with penalties and interest. The defendants argue that they cannot be liable because: (1) no one told them that federal taxes had to be paid before other debts; (2) the parties consummated a settlement agreement concerning the estate's federal tax liabilities; and (3) the plaintiff accepted partial payment of the debt as an accord and satisfaction.

**DETERMINATIONS OF UNCONTROVERTED FACT**

The defendants were granted letters testamentary on February 28, 1990. (Doc. 24, Exhibit B).

On or about July 20, 1990, the plaintiff filed a proof of claim, which includes the following language:

> This debt has priority and must be paid in full in advance of distribution to
> creditors to the extent provided by law.  See 31 U.S.C. Section 3713(a).
> Any executor, administrator or other person who fails to pay the claims of
> the United States in accordance with its priority may become personally liable
> for this debt under 31 U.S.C. Section 3713(b).

(Doc. 24, Exhibit D at 2, ¶ 7).

While the defendants served as co-executors, the estate paid city and state taxes of at least $30,000.  (Doc. 24, Exhibit G at 7-9; *id*. Exhibit H).

On October 4, 1999, the estate and the plaintiff announced to the Probate Court that they had reached a settlement agreement with respect to the plaintiff's claim against the estate.  The settlement called for the estate to pay the plaintiff $37,840, plus interest at 8% per annum to the date of payment, with payment to be made within 60 days.  The defendants agreed to be removed as co-executors should payment not be made within that time.  (Doc. 24, Exhibit K at 2-3).

Payment was not made, and the defendants were removed as co-executors on January 25, 2000.  (Doc. 24, Exhibit N).  The general administrator was appointed administrator of the estate.  (*Id*.).  In July 2000, the defendants offered to purchase two parcels of real property — the only remaining assets of the estate — for $37,200.  (*Id*., Exhibit P).  On October 30, 2000, the Probate Court authorized the sale.  (*Id*., Exhibit Q).  On June 7, 2002, the Circuit Court ratified the Probate Court's order and confirmed the sale of the property, directing the administrator to distribute the residue of the estate to the plaintiff "in partial satisfaction of its lien against the Estate."  (*Id*., Exhibit R).  On October 17, 2002, the administrator wrote a check to the plaintiff for $32,055.25 "in partial satisfaction of a tax lien," (*id*., Exhibit S), and in her cover letter to the plaintiff explained that payment was being made "in accordance with the Court's [attached] order dated June 7, 2002."  (Doc. 24, Exhibit T at 33, Exhibit G).  The plaintiff received the check on October 21, 2002, (*id*.), and applied it to the estate's tax liability.  (*Id*., Exhibit F).

As of September 30, 2005, the estate's federal tax liability (assuming the failure of the defendants' arguments) was $69,631.62.  (Doc. 24, Exhibit E).

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 26 U.S.C. § 7402(a) and 28 U.S.C. §§ 1331, 1340 and 1345.  Venue is proper in this Court pursuant to 28 U.S.C. §§

1391(b) and 1396.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."  *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).

"When the *moving* party has the burden of proof at trial, that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. [citation omitted] In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof, no reasonable jury could find for the nonmoving party."  *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)(en banc) (emphasis in original); *accord Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

"If the party moving for summary judgment fails to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made. [citation omitted] If, however, the movant carries the initial summary judgment burden ..., the responsibility then devolves upon the non-movant to show the existence of a genuine issue of material fact."  *Fitzpatrick v. City of Atlanta*, 2 F.3d at 1116.  "For issues on which the movant would bear the burden of proof at trial, the non-movant, in order to avoid summary judgment, must come forward with evidence sufficient to call into question the inference created by the movant's evidence on the particular material fact."  *Id*.

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995).  The Court therefore confines its consideration to those arguments the parties have elected to assert expressly.

### A.  The Estate's Liability.

As noted, the plaintiff's calculation of the estate's tax liability is uncontroverted.  Nor do the defendants challenge the plaintiff's legal right, in general, to collect such liabilities from the

taxpayer.  They argue, however, that the settlement agreement precludes the plaintiff from seeking additional funds.  There are of course two huge problems with this argument.  First, the agreement called for the estate to make payment within 60 days of October 4, 1999 — or by December 3, 1999 — yet the plaintiff received no funds until October 21, 2002, almost three years later.  Second, the agreement called for payment of $37,840 plus interest — or over $47,000 as of October 2002[1] —  yet the plaintiff received only $32,055.25.

To counter the first difficulty, the defendants point to the agreement's failure to specify that time was of the essence, and they conclude that the 60-day period provided by the agreement should therefore be ignored in favor of a "reasonable time" requirement in accordance with Alabama law.  They continue by endeavoring to excuse almost all of the three-year delay between agreement and payment.  The first eleven months, they say, was consumed by their efforts to obtain a loan with which to purchase the estate's property.  They claim to have made payment to the administrator "immediately" after receiving the loan, so that the remaining two years of delay must be laid at the feet of the administrator and/or the state judicial system, not at theirs.  (Doc. 32 at 2).

The construction of an agreement to compromise a federal tax liability is governed by federal common law.  *Begner v. United States*, 428 F.3d 998, 1004 (11th Cir. 2005).  When the federal common law is not yet developed, the Court may look to state law in determining how federal common law should unfold.  *Id* at 1004-05.  The parties have cited, and the Court has located, no case discussing "reasonable time" as a principle of the federal common law of contracts.  However, as the plaintiff (which cited *Begner*) has offered no reason why the Court should not look to Alabama law in this regard in fleshing out federal common law, the Court will do so.

"In ordinary cases time of performance is, in equity, regarded as formal, and as meaning only that the contract shall be completed within a reasonable time and substantially according to the agreement, regard being had to all the circumstances."  *Hunter-Benn & Co. v. Bassett*

---

[1]Three years of simple interest at 8% per annum would exceed $9,080.  Because the agreement called for daily compounding, (Doc. 24, Exhibit K at 2), the actual interest would be greater.

*Lumber Co.*, 139 So. 348, 349 (Ala. 1932).  The defendants focus on the "reasonable time" portion of *Hunter-Benn* but ignore its "substantially according to the agreement" limitation. That is, while this rule offers some flexibility when dealing with a specified time for performance, the expanded time for performance cannot be simply reasonable but must also be substantially in accordance with the parties' agreed time for performance.  Thus, while a specified time for performance of 60 days may be enlarged by a few days (if that is otherwise reasonable), it cannot be extended by several years, because any such exponential enlargement of time could not be "substantially according to the agreement" of the parties for a 60-day period.

Thus, under the defendants' own authority, the estate breached the settlement agreement by failing to pay within, or shortly beyond, the 60-day window provided by the agreement.  The plaintiff, citing *Cities Service Helex, Inc. v. United States National Helium Corp.*, 543 F.2d 1306 (Ct. Cl. 1976), argues that this breach "justified recession [sic]" of the agreement.  (Doc. 35 at 5).  True enough but, as *Cities Service* itself teaches, even when rescission is justified, in order to actually rescind the non-breaching party must "decid[e] to close the contract and so conduc[t] himself."  543 F.2d at 1313.  The plaintiff has identified no evidence that it decided to rescind the settlement agreement or that it took any action evincing a rescission at any time before receiving payment in October 2002.[2]  Failing rescission, "the obligations of both parties remain in force and the injured party may retain only a claim for damages for partial breach."  *Id.* Because the plaintiff has failed to show that it rescinded the settlement agreement beforehand,

---

[2]Although unremarked by the plaintiff, its certified assessments reflect that it deemed the "offer in compromise rejected" as of July 2000.  (Doc. 24, Exhibit F).  The notations may show that the plaintiff considered the agreement rescinded, but it appears that federal common law requires that, in order for a rescission to be effective, the rescinding party must give notice of the rescission to the other party.  *See Griggs v. E.I. du Pont de Nemours & Co.*, 385 F.3d 440, 445, 449 (4th Cir. 2004)(as a matter of federal common law, rescission may be granted as a remedy under the Age Discrimination in Employment Act; legal rescission, which occurs without judicial intervention, "is effected when the plaintiff gives notice to the defendant that the transaction has been avoided").  This appears also to be the law of Alabama, to the extent it is looked to as informing federal common law.  *Alabama Football, Inc. v. Stabler*, 319 So. 2d 678, 681 (Ala. 1975).  There is no evidence that the plaintiff notified the defendants or the estate that it was rescinding the settlement agreement.

for purposes of deciding the motion for summary judgment the agreement remained in effect as of October 2002.[3]  The issue becomes whether the estate satisfied the agreement at that time.

As noted, the payment the plaintiff received in October 2002 was approximately $15,000 below the amount specified by the settlement agreement.  The defendants argue that the plaintiff's acceptance of the estate's check worked either a modification of the settlement agreement as to the amount to be paid or an accord and satisfaction.  (Doc. 32 at 3).  However, "[t]he settlement of disputed tax liabilities is governed by 26 U.S.C. §§ 7121 and 7122 ....  The requirements set forth in these statutes and the accompanying regulations are exclusive and strictly construed."  *Klein v. Commissioner*, 899 F.2d 1149, 1152 (11th Cir. 1990).  Thus, there can be no accord and satisfaction of a tax dispute absent full compliance with the statutory and regulatory requirements.  *Bokum v. Commissioner*, 992 F.2d 1136, 1142 n.8 (11th Cir. 1993).  In particular, "[b]ecause of this exclusive method [imposed by Sections 7121 and 7122], no theory founded upon general concepts of accord and satisfaction can be used to impute a compromise settlement, [citation omitted], and therefore none resulted from the government's acceptance and cashing of appellant's check."  *Bowling v. United States*, 510 F.2d 112, 113 (5th Cir. 1975).[4]  For the same reason, the plaintiff's acceptance of the estate's check could not work a modification of the 1999 settlement agreement.[5]

### B.  The Defendants' Liability.

A claim of the United States Government shall be paid first when ...

---

[3]The same reasoning and result govern the plaintiff's unamplified parallel argument that the defendants repudiated the settlement agreement by removing the case from Probate Court to Circuit Court on December 6, 1999.  (Doc. 35 at 5).

[4]*Accord Bear v. Commissioner*, 1994 WL 96393 at **1 (9th Cir. 1994)("There is no accord and satisfaction from tax liability where the IRS cashes a taxpayer's check which contains a qualified endorsement.").

[5]Given that the administrator herself considered the October 2002 check to be given in "partial satisfaction" of the estate's federal tax liabilities and so notified the plaintiff when the check was tendered, it is unclear how the plaintiff's acceptance of the check could work a modification or an accord and satisfaction even if federal law preserved a field of operation for those doctrines.

> the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor.
>
> ...
>
> A representative of a person or an estate ... paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government.

31 U.S.C. § 3713(a)(1)(B), (b). The defendants do not dispute that this provision applies to them and their conduct in this case.[6] Nor do they deny that they had "notice of facts that would lead a reasonably prudent person to inquire as to the existence of the debt owed [the plaintiff] before making the challenged distribution or payment." *United States v. Coppola*, 85 F.3d 1015, 1020 (2nd Cir. 1996). Their only articulated defense is that no one told them that they could be held personally liable should they pay others before paying the plaintiff. Given the explicit warning in the plaintiff's proof of claim, this assertion is factually dubious. It is in any event legally untenable, as "[a]ll citizens are presumptively charged with knowledge of the law ...." *Atkins v. Parker*, 472 U.S. 115, 130 (1985). Although "[a]rguably that presumption may be overcome in cases in which the statute does not allow a sufficient 'grace period' to provide the persons affected by a change in the law with an adequate opportunity to become familiar with their obligations under it," *id.*, Section 3713 has been on the books unchanged since 1982.

### C. Amount of the Defendants' Liability.

The defendants are liable "to the extent of the payment [from the estate] for unpaid claims of the [plaintiff]." 31 U.S.C. § 3713(b).

> Courts have also taken an expansive view of the type of payments or 'distributions' from the estate for which an executor may be held liable. ... Indeed, ... an executor may be held liable under the federal insolvency statute for a distribution of funds [from the estate] that is not, strictly speaking, the payment of a debt. ... While [the defendant] did not defeat the Government's tax claim against the estate by paying a debt of the estate, he depleted the assets of his father's estate by distributing them to himself and his family, thereby preventing payment of the tax debt. Such conduct certainly falls within the broad prohibitions of the federal insolvency statute.

---

[6]"There is no question that taxes owed to the United States fall within the scope of a 'claim of the Government' under the statute's broad terms." *United States v. Coppola*, 85 F.3d 1515, 1520 (2nd Cir. 1996).

*United States v. Coppola*, 85 F.3d at 1020 (internal quotations omitted).

The defendants' payment of city and state taxes constitutes the payment of the estate's debts. *E.g., United States v. Cole*, 733 F.2d 651, 655 (9th Cir. 1984). Accordingly, the defendants are liable under Section 3713(b) in the principal amount of $30,000, as requested by the plaintiff, for making such payments without paying the plaintiff's claim. (Doc. 24 at 9).

The plaintiff also seeks to impose liability in the additional amount of $31,200, based on its assertion that the defendants allowed the estate to pay the decedent's mother $300 a month from January 1991 through August 1999. (Doc. 24 at 2, 9). Such payments would fall within Section 3713(b) under *Coppola*. However, the plaintiff has failed to meet its initial burden of showing that such payments were made by the estate and in this amount. The defendants' final statement in Probate Court states that "[w]e provided for and gave [the decedent's] mother Mrs. Reba Irby support while she was alive etc., from 1990 to August of 1999." (*Id.*, Exhibit H at 1). While it may be assumed that this evidence establishes that the estate furnished Ms. Irby some support, neither it nor the substantively similar testimony of defendant Seymour Irby, III at a hearing in May 2000, (*id.*, Exhibit G at 9-10), reflects the amount of support provided by the estate.

To bridge this awkard gap, the plaintiff submits a letter from Mr. Irby to his aunt dated September 1991, which states as follows:

> I wish to give you three hundred (300.00) each month, to help with the care of our grandmother and your mother.
> Furthermore, once we pay off all of our father's bills and debts; we will be able to pay more money each month toward mama Reba's care and saving etc.

(Doc. 24, Exhibit I). On the same page is a photocopy of a check from Mr. Irby to his aunt in the amount of $300, dated September 1991 and drawn on Mr. Irby's personal account. (*Id.*). In the lower right corner of the page is a handwritten notation of unknown provenance stating, "4,400 Total in checks." (*Id.*).

While Mr. Irby's letter clearly expresses an intention to pay $300 a month for Ms. Irby, it does not establish that this intention was in fact carried out, and certainly not for the 104 months consecutive months the plaintiff claims. Indeed, the language of the letter suggests that the September 1991 check was the first of its kind, yet the plaintiff seeks to impose liability for $300 a month beginning January 1991. Moreover, the "4,400 "noted in the corner, while ambiguous,

may well signify that only that amount was ever provided for Ms. Irby. Finally, the letter is unclear as to the source of the funds, and the check is drawn on Mr. Irby's personal account, with no indication that the funds came from the estate. Whether or not this evidence *would entitle* a jury to find that the estate provided $31,200 for Ms. Irby, it does not carry the plaintiff's initial burden on motion for summary judgment of showing that a reasonable *would have* to make such a finding.

The plaintiff also argues that the Court should award an additional $37,500 under Section 3713(b), representing the rental value of the estate's realty, on which the defendants allowed relatives to live rent-free. (Doc. 24 at 9). The plaintiff offers neither authority nor explanation for its implicit proposition that the failure to *maximize* the estate's *income* can be equated with the *depletion* of the estate's *assets* for purposes of Section 3713 and *Coppola*, and the Court is unwilling to make that dubious leap unaided.

Finally, the plaintiff argues that it should be awarded prejudgment, based on the simple fact of liability under Section 3713(b). (Doc. 24 at 9). The plaintiff has cited, and the Court has located, no case awarding prejudgment interest under Section 3713(b), which certainly suggests it is an unusual remedy, triggered by more than mere liability. As the sole authority cited by the plaintiff reflects, the award of prejudgment interest is discretionary with the Court. *In re: International Administrative Services, Inc.*, 408 F.3d 689, 710 (11th Cir. 2005).[7] In the absence of cogent explanation why the Court's discretion should be exercised in favor of making such an award, the Court exercises its discretion not to do so.

## CONCLUSION

For the reasons set forth above, the plaintiff's motion for summary judgment is **granted** to the extent it requests a determination that the defendants are liable to the plaintiff in the amount of $30,000. In all other respects, the motion is **denied**.

DONE and ORDERED this 21st day of December, 2005.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[7]*Accord Securities & Exchange Commission v. Carrillo*, 325 F.3d 1268, 1269 (11th Cir. 2003).